### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.

| | | |
|---|---|---|
| CARLOS GUARISMA, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **CLASS ACTION** |
| MICROSOFT CORPORATION, a Washington corporation, | ) ) ) | |
| Defendant. | ) ) | |

### CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
### FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

1.      This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"). The FCRA, at 15 U.S.C. § 1681c(g), states that, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Despite the clear language of the statute, Defendant willfully or knowingly chose not to comply. As such, Plaintiff and certain other consumers who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were provided with a violative receipt, suffered violations of § 1681c(g). As consequence, each have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendant conducts business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

4.      Plaintiff Carlos Guarisma ("Plaintiff") is a natural person, who resides in Miami-Dade County, Florida.

5.      Defendant, Microsoft Corporation ("Defendant"), is a Washington corporation whose principal address is One Microsoft Way, Redmond, WA 98052.

6.      Defendant, among other things, is in the business of personal computing products and accessories through retail outlets across the United States. One such retail outlet, is located at is located at 19575 Biscayne Blvd.,  #1565, Aventura, FL 33180.

## FACTUAL ALLEGATIONS

### Background of FACTA

7.      In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

8.      One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt

provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

     9.    Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

(the "Receipt Provision").

     10.    After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

     11.    The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." [1] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

     12.    Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be

---

[1] Source: http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html (Last accessed: Nov. 19, 2015).

printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[2]

13.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[3]

14.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number.  Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

15.     In the interim, Card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure

---

[2] Source: http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last accessed: Nov. 19, 2015).
[3] Source:  https://www.govtrack.us/congress/bills/110/hr4008/text  (Last  accessed:  Nov.  19, 2015).

consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as Exhibit A.

16.     According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.[4]

17.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

**Defendant's Prior Knowledge of FACTA**

18.     Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.  Defendant could have readily done the same.

19.     Not only was Defendant informed it could not print the expiration date of credit cards, it was contractually prohibited from doing so.  Defendant accepts credit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

---

[4] http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: Nov. 19, 2015).

20.     As noted above, the processing companies have required that credit card expiration dates not be shown since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

> *See* Exhibit B, attached hereto.

21.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

> *See* Exhibit C, attached hereto.

22.      On June 23, 2003, Microsoft announced that Peter Cullen, a recognized privacy leader and current corporate privacy officer for Royal Bank of Canada (RBC), joined the company as chief privacy strategist.[5] During his eleven year tenure at Microsoft, Cullen was directly responsible for managing the development and implementation of programs to bolster the trustworthiness of Microsoft products, services, processes and systems worldwide.[6]

23.     During his tenure at Microsoft, Cullen was (and presumably still is) a member of

---

[5] https://news.microsoft.com/2003/06/23/microsoft-hires-peter-cullen-as-chief-privacy-strategist/
[6] https://www.linkedin.com/in/pcullengigs

the Board of Directors of the International Association Privacy Professionals ("IAPP"). The IAPP is responsible for developing and launching the only globally recognized credentialing programs in information privacy: the Certified Information Privacy Professional (CIPP), the Certified Information Privacy Manager (CIPM) and the Certified Information Privacy Technologist (CIPT). The CIPP, CIPM and CIPT are the leading privacy certifications for thousands of professionals around the world who serve the data protection, information auditing, information security, legal compliance and/or risk management needs of their organizations.[7]

24.     *The Privacy Advisor* is the official monthly newsletter of the International Association of Privacy Professionals. All active association members, including Cullen, automatically receive a subscription to *The Privacy Advisor* as a membership benefit. Among the topics routinely addressed in *The Privacy Advisor* are liabilities faced by retailers who ignore the mandates of FACTA.

25.     From the May 2007 edition of *The Privacy Advisor*, "Companies should review promptly their policies related to credit card receipts, . . . They also should begin to review more aggressively the overall requirements of the FACTA law, including such broadly applicable provisions as the 'disposal rule' related to the disposal of consumer report information."[8]

26.     From the October 2007 edition of *The Privacy Advisor*, "Given these circumstances, privacy professionals at consumer-oriented businesses, whether online or offline, should investigate point-of-sale practices immediately and, if necessary, redact all but the last five digits of the credit or debit card number and the expiration date from all electronically

---

[7] https://iapp.org/about/mission-and-background
[8] https://iapp.org/media/pdf/publications/May07_Advisor.pdf

printed customer receipts."[9]

27.     Cullen's knowledge and experience no doubt translates to Microsoft having intimate knowledge of the requirements of FACTA, not only during his tenure at Microsoft, but in its current day to day operations.

## Plaintiff's Factual Allegations

28.     On or about November 18, 2015, Plaintiff purchased certain goods from Defendant's business location in Aventura, Florida.

29.     Plaintiff paid for the subject goods using his personal Visa credit card at which time he was presented with a printed receipt bearing the first six digits of his credit card account, along with the last four digits.

30.     In addition to the unlawful disclosure of his credit card account number, the violative receipt contains other sensitive information about Plaintiff as well, including his name, and the name of the salesperson that conducted the transaction.

## Defendant's Misdeeds

31.     At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

32.     At all times relevant herein, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

33.     It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

---

[9] https://iapp.org/media/pdf/publications/Oct07_Advisor.pdf

34.     Consistent with Defendant's policy and procedure, Defendant knowingly, willfully and/or recklessly includes the first six and the last four numbers of credit cards on its electronically printed receipts.

35.     The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, including the names of all customers, and likewise, programmed not to display certain information.

36.     Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant continues to issue point of sale receipts, which contain more than the last five numbers of the credit card, in direct violation of the Receipt Provision of the FCRA.

37.     Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

38.     Notwithstanding the fact that Defendant had years to comply with FACTA's requirements **and the fact Defendant has intimate knowledge of the federal statute**, Defendant continues to act in conscious and reckless disregard for the rights of others.

39.     To paraphrase the words of Judge Posner in *Redman v. RadioShack Corp.*, Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at *2.

## CLASS ACTION ALLEGATIONS

40.     This action is also brought as a Class Action under Fed. R. Civ. P. 23.  Plaintiff

proposes the following class, defined as follows, subject to modification by the Court as

required:

> *(i) All persons in the United States (ii) who, when making payment
> pursuant to a purchase made at a Microsoft store (iii) made such payment
> using a credit or debit card (iv) and were provided with a point of sale
> receipt (v) which displayed more than the last five digits of the credit or
> debit card account number (vi) within the two (2) years prior to the filing
> of the complaint.*

44.     Plaintiff falls within the class definition and is a member of the class. Excluded

from the class is Defendant and any entities in which Defendant has a controlling interest,

Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom

this action is assigned and any member of the Judge's staff and immediate family, and claims for

personal injury, wrongful death, and/or emotional distress.

**Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.**

45.     The members of the class are capable of being described without managerial or

administrative problems.  The members of the class are readily ascertainable from the

information and records in the possession, custody or control of Defendant.

46.     Defendant operates retail stores throughout the United States, accepts credit cards

at each and, upon information and belief, prints receipts reflective of credit card transactions.

Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual

joinder of all members is impractical. The disposition of the claims in a class action will provide

substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The

Class can be identified through Defendant's records or Defendant's agents' records.

10

47.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

48.     This suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.   The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

    a.     Whether, within the two years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last five digits of the credit card account number was printed;

    b.     Whether Defendant's conduct was willful and reckless;

    c.     Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

    d.     Whether Defendant should be enjoined from engaging in such conduct in the future.

50.     As a person that patronized Defendant's retail store and received a receipt upon which more than the last five digits of the credit card account number was printed, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately

11

represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

51.     The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully or knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

52.     Plaintiff and the members of the class have all suffered harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the class, along with countless future patrons of Defendant's many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will (as it has already shown) continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

53.     Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

54.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

55.     Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

56.     15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

57.     This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

58.     Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

59.     On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

60.     At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

61.     Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; and having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

62.     As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft.  Defendant is liable to

Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

    **WHEREFORE**, Plaintiff Carlos Guarisma respectfully requests that this Court enter judgment in her favor and the class, and against Defendant Microsoft Corporation, for:

    a.    An Order granting certification of the Class;

    b.    Statutory damages;

    c.    Punitive damages;

    d.    Injunctive relief;

    e.    Attorneys' fees, litigation expenses and costs of suit; and

    f.    Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

**Plaintiff demands a trial by jury on all counts.**

Dated: November 20, 2015

                              Respectfully submitted,

                              /s/ Bret L. Lusskin, Jr.
                              Bret L. Lusskin, Jr., Esq.
                              Florida Bar No. 28069
                              BRET LUSSKIN, P.A.
                              20803 Biscayne Blvd., Ste. 302
                              Aventura, FL 33180
                              Telephone: (954) 454-5841
                              Facsimile: (954) 454-5844
                              blusskin@lusskinlaw.com