**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:15-cv-24326-CMA**

CARLOS GUARISMA

       Plaintiff,

vs.

MICROSOFT CORPORATION,
a Washington Corporation

       Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**COMBINED MOTION TO DISMISS OR ALTERNATIVELY COMPEL ARBITRATION**

Microsoft knew FACTA expressly prohibited it from printing point-of-sale transaction receipts that reveal more than the last five digits of a consumer's debit and credit card number. (Complaint ¶19-¶27). Yet it willfully allowed its system to routinely print *ten* digits, *i.e.*, most, of its customers' debit and credit card numbers on its transaction receipts, thus allowing its retail employees and anyone else who might find the receipts access to this personal and sensitive information. To make matters worse, Microsoft includes its customers' first and last names on the receipts. Now it seeks to avoid the consequences of its illegal conduct by arguing this Court lacks the power to decide the case. However, neither of the grounds for its motion have merit.

Microsoft's argument that Plaintiff cannot clear the low "injury in fact" hurdle fails because Microsoft's actions caused Plaintiff multiple Article III injuries. First, both *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and *Church v. Accretive Health, Inc.*, No. 15-15708 (11th Cir. July 6, 2016), attached as Exh. 1, establish that Microsoft's alleged violation of Plaintiff's FACTA rights, by itself, is a concrete injury. Second, *Spokeo* reaffirms that intangible harms identified by Congress or recognized at common law are also concrete injuries. Congress determined and the common law recognizes that Microsoft's inclusion of more than the last five digits of consumers' credit card numbers on its transaction receipts violates consumers' privacy interests. Congress also determined this practice creates an unacceptable risk of identity theft. Finally, *Spokeo* confirms that Plaintiff's right to recover statutory damages presents a concrete dispute sufficient to meet Article III. Accordingly, Microsoft's request for dismissal should be denied.

Microsoft's alternative bid to force Plaintiff to arbitrate his claims fails because Plaintiff never agreed to arbitrate with Microsoft. Microsoft's argument is based on the terms of a warranty that states that it only applies to the user of the product that Plaintiff bought. Here, however, Plaintiff never used the product, or even opened its packaging, because he bought the product for someone else. Moreover, the arbitration clause is not part Plaintiff's agreement to purchase the product because he did not assent to it. Microsoft never mentioned or referenced the clause in connection with his purchase, and Plaintiff was never made aware of it. Finally, even if the arbitration clause had been incorporated into Plaintiff's purchase, it would not reach his FACTA claim because the clause is narrowly tailored to only cover disputes involving the product or its warranty. Plaintiff's claim does not arise from the product or warranty. His claim arises from Microsoft's disclosure of private credit card information on its transaction receipts.

1

Accordingly, Microsoft's request to force arbitration also should be denied.

I.   **Microsoft's Request for Dismissal for Lack of Standing Should Be Denied Because Microsoft Subjected Plaintiff to Multiple Concrete Injuries.**

Microsoft's request for dismissal is principally based on its assertion that *Spokeo* demonstrates Plaintiff suffered no Article III injury.[1] This argument is misplaced because *Spokeo* did not even decide if the injury requirement was met in that case. Instead, it ruled the Ninth Circuit's analysis was incomplete, and remanded for further consideration. *Spokeo*, 136 S.Ct. at 1545 ("We take no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct."). Indeed, far from supporting Microsoft, *Spokeo* just reiterates a number of long-standing general principles about the injury requirement that confirm that Plaintiff meets that requirement in several ways.

*Spokeo* reaffirms the nearly fifty-year old rule that the required injury must be "concrete and particularized." *Spokeo*, 136 S.Ct. at 1545, citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (italics in original); *see also Schleisinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974). Microsoft claims that Plaintiff does not meet either of these elements, but it fails to present distinct arguments about them. Instead, its discussion just lumps the two concepts together, which is the very reason *Spokeo* reversed the Ninth Circuit. *Spokeo*, 136 S.Ct. at 1548.

Contrary to Microsoft's claim, Plaintiff meets the particularization element because he alleges that Microsoft disclosed too much of *his* credit card number, thus forcing him to protect the receipt and its contents from further disclosure instead of just discarding it. (Decl. of Plaintiff at ¶4, attached as Exh. 2). In other words, Microsoft's actions affected him "in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. Accordingly, the only issue is whether Plaintiff asserts an injury that is "concrete."

A "concrete" injury is simply one that is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. It does not need to be large or substantial, or even tangible. Not only is an

---

[1] Standing has three elements: (1) injury in fact, (2) fairly traceable to the challenged conduct, (3) that is likely to be redressed by a favorable decision. *Spokeo*, 136 S.Ct. at 1547, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Microsoft only challenges whether Plaintiff has an injury in fact. It does not and cannot legitimately dispute that Plaintiff's injuries are fairly traceable to the challenged conduct (Microsoft's disclosure of his credit card information on its transaction receipt), or that Plaintiff's injuries are likely to be redressed by a favorable decision (because Plaintiff can recover statutory damages). *See Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014) (finding Article III standing in a FACTA case).

intangible harm sufficient, but so is an "identifiable trifle." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009), citing *United States v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689, fn.14 (1973). As the Supreme Court explains:

> "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see *Baker v. Carr*, 369 U.S. 186; a $ 5 fine and costs, see *McGowan v. Maryland*, 366 U.S. 420; and a $ 1.50 poll tax, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663. …. As Professor Davis has put it: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14 (citations omitted); and, *e.g.*, *Palm Beach Golf Ctr.-Boca v. John G. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015) (concrete injury exists when the plaintiff's fax line is tied up for "one minute.").

Likewise, "concrete" does not mean economic or monetary. *See*, *e.g.*, *Id.* and *Common Cause*, 554 F.3d at 1351 (having to show a photo ID is a concrete injury); and *see Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14. To the contrary, *Spokeo* reaffirms that a concrete injury can be intangible, and amount to nothing more than a "risk of real harm." *Spokeo*, 136 S.Ct. at 1549. In fact, *Spokeo* goes even further, recognizing that the alleged violation of a statute, by itself, can supply the requisite injury. *Id.* at 1544.[2]

These well-established principles demonstrate that Microsoft's disclosure of ten digits of Plaintiff's credit card number caused him multiple concrete injuries.

### A.   Microsoft's Violation of Plaintiff's Substantive Rights under FACTA Is Itself a Concrete Injury.

Microsoft principally bases its dismissal request on a misstatement of what *Spokeo* says. According to Microsoft, "[i]n *Spokeo*, the Supreme Court made clear that the alleged violation of a federal statute, on its own, is insufficient to show a 'concrete' injury." (Memo. at p.9).

Actually, *Spokeo* says the opposite. It expressly states "the violation of a procedural right granted by statute *can* be sufficient in some circumstances to constitute injury in fact. In other

---

[2] The words "actual or imminent" are also used to describe the required injury, but Microsoft makes no distinct argument on this point either. Likewise, *Spokeo* does not draw a distinction between an injury that is "concrete," *i.e.*, real, and one that is "actual."

words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S.Ct. at 1544 (first italics added). *Spokeo* also describes the required injury as "an invasion of a legally protected interest…" *Id.* at 1548, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Finally, *Spokeo* reaffirms that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992). Accordingly, Microsoft's claim that the Court should ignore the particular statutory violation asserted, and just decide if Plaintiff meets the concrete injury requirement "had the statute not existed" (Memo. at 8), is flat wrong. *Spokeo* instructs that the particular statutory violation asserted materially affects whether the plaintiff has alleged a concrete injury.

Importantly, *Spokeo*'s remarks about when a statutory violation itself can constitute a concrete injury specifically refer only to *procedural* rights, apparently because the FCRA provisions at issue in that case were procedural. *See Spokeo*, 136 S.Ct. at 1545, citing, *inter alia*, 15 U.S.C. §1681e ("Compliance Procedures").[3] The majority did not discuss the concrete injury requirement in the context of *substantive* rights.

Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone meets the concrete injury requirement:

> Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
>
> * * *
>
> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co.* v. *TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—

---

[3] *Spokeo*'s hypothetical about the impact of an inaccurate zip code in a credit report, discussed by Microsoft, also concerns an alleged procedural violation. *See Spokeo*, 136 S.Ct. at 1550.

4

one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring).

The *Havens Realty* case Justice Thomas cites is particularly instructive. A unanimous Supreme Court ruled that the violation of the plaintiff's statutory right not to be lied to about available housing was an "injury in fact" even if the plaintiff had no intention of doing business with the defendant, and interacted with the defendant *fully expecting* it to violate her rights:

> As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, *supra*, at 500, quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent *fully expecting* that he would receive false information, and *without any intention* of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added). Needless to say, one who interacts with a firm having no intention of doing business with it, and expecting the firm to lie, suffers no harm beyond the statutory violation. Nevertheless, in the context of substantive rights, the Court ruled nothing more is required to meet Article III. *See Havens Realty Corp.*, 455 U.S. at 373-74.

The Eleventh Circuit has reaffirmed this rule twice, including post-*Spokeo*. Just days ago it cited both *Havens Realty* and *Spokeo* to hold that a debt collector's violation of a debtor's statutory right to receive a notice is sufficient, by itself, to meet the concrete injury requirement. *Church v. Accretive Health, Inc.*, No. 15-15708 (11th Cir. July 6, 2016) (unpub.), Slip. Op at p.9, attached as Exh. 1. Noting that this right is substantive (*Id.*, n.2), the Court ruled that "Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures…" *Id.* Likewise, with FACTA, Congress created a substantive right to receive transaction receipts that do not reveal more than the last five digits of one's credit card number, and a new injury – the disclosure of more than the last five digits of one's card number on the receipt. *See Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014) (FACTA creates a "right to obtain a receipt

at the point of sale showing no more than the last five digits of the consumer's credit or debit card number.").[4]

The Eleventh Circuit also recently followed *Havens Realty* to conclude that a plaintiff has standing to sue a business for having an architectural barrier that violates his rights under the Americans with Disabilities Act, even if the plaintiff is merely a "tester" who visits the business just to encounter the barrier so he can sue. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330 (11th Cir. 2013). As in *Havens Realty* and *Church*, the plaintiff in *Marod* did not identify harm beyond the violation of his substantive rights, and yet the Court ruled that he still met the injury requirement. *See Id.* at 1332. In short, *Havens Realty*, *Church* and *Marod* squarely establish that a violation of one's substantive rights, by itself, is enough to satisfy Article III.[5]

Microsoft cites no authoritative case to the contrary. Instead, it cites out-of-circuit district court cases that do not address *Havens Realty* or *Marod*, and do not discuss whether a violation of a federal substantive right is a concrete injury. *See Khan v. Children's Nat'l Health Sys.*, 2016 U.S. Dist. LEXIS 66404 (D. Md. May 19, 2016) and *Smith v. Ohio State Univ.* 2016 U.S. Dist. LEXIS 74612 (S.D. Ohio June 8, 2016). *Khan* is distinguishable because it dealt with alleged violations of state law. The court found that state law violations are not equivalent to violations of federal rights because, unlike Congress, states do not have the power to define Article III injuries. *See Khan*, 2016 U.S. Dist. LEXIS 66404 at *21 ("where Khan alleges violations of state law, she advances no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant…")

*Smith* is distinguishable because it just acknowledges *Spokeo*'s statement that a violation of *procedural* rights may not be enough to meet the injury requirement in some circumstances. *See Smith*, 2016 U.S. Dist. LEXIS 74612 at *11. It does not discuss the implications of a violation of *substantive* rights. Moreover, *Smith* found no injury in that case because "Plaintiffs

---

[4] FACTA does not prescribe any procedures for complying with this requirement.

[5] As *Church* shows, *Havens Realty* and *Marod* remain good law. They are consistent with *Spokeo*, which describes the required injury as "'*an invasion of a legally protected interest*' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (emphasis added). *Spokeo*'s majority does not criticize or distinguish *Havens Realty*, even though Justice Thomas favorably cites it. Finally, because *Spokeo* did not decide the case before it, it cannot be read to overrule *Havens Realty* or *Marod*. *See Stein v. Buccaneers, LP*, 772 F.3d 698 (11th Cir. 2014) ("A Supreme Court dictum in a different setting rarely suffices to overturn a clear circuit holding on the precise question at issue.") (citing cases).

admitted they did not suffer consequential damage as a result of [Defendant's] breach of the FCRA." *Id.* This conclusion is questionable, however, because *Spokeo* does not require proof of "consequential damage" to establish an injury-in-fact. Again, *Spokeo* reaffirms that intangible harms identified by Congress or recognized at common law are sufficient.

In contrast to the inapposite cases Microsoft cites, the only appellate case to address Article III in the FACTA context confirms that the violation of Plaintiff's FACTA rights, by itself, is a concrete injury. *See Hammer*, 754 F.3d at 498 and n.3 ("the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*. This is not a novel principle within the law of standing.") (italics in original) (collecting cases). As required by *Spokeo*, in *Hammer* the Eighth Circuit considered and determined that the defendant's violation of the plaintiff's FACTA rights was both particularized *and* concrete, *i.e.*, not abstract. *See Hammer*, 754 F.3d at 499 ("Congress may not, for example, permit individuals to enforce 'an abstract, self-contained, noninstrumental 'right' …. this limitation poses no obstacle here."); *cf. See Spokeo*, 136 S.Ct. at 1548 ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'"). Accordingly, the Court concluded Article III was satisfied. *Hammer*, 754 F.3d at 499. ("Because appellants allege that they have suffered an actual, individualized invasion of a statutory right, we conclude that they have satisfied the injury-in-fact requirement of Article III standing."). Thus, consistent with the Eleventh Circuit's recent decision in *Church*, *Hammer* further confirms that Microsoft's violation of Plaintiff's substantive rights under FACTA, by itself, is a concrete injury.

### B. Microsoft's Disclosure of Plaintiff's Private Credit Card Information, and Its Exposure of Plaintiff to a Risk of Identity Theft, Are Also Concrete Injuries.

Microsoft also injured Plaintiff beyond violating his substantive rights. *Spokeo* reaffirms that the universe of concrete injuries includes intangible harms. *See Spokeo*, 136 S.Ct. at 1549 ("we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); *see also*, *e.g.*, *Friends of the Earth*, 528 U.S. at 183 (a lessened "aesthetic" and "recreational" value of a river is an injury in fact). An asserted intangible harm is concrete when it is analogous to a harm recognized at common law or one identified by Congress:

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has

> traditionally been regarded as providing a basis for a lawsuit in English or American courts. [citation omitted]. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Spokeo*, 136 S.Ct. at 1549. Indeed, "Congress has the power to *define* injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*, quoting *Lujan*, 504 U.S. at 580 (emphasis added). These well-established principles show that Microsoft injured Plaintiff in several additional ways.

### 1.     Microsoft Violated Plaintiff's Privacy Interests.

Microsoft's exposure of Plaintiff's credit card information to its retail employees and anyone else who might handle the receipt violates Plaintiff's privacy interests. This injury is concrete because Congress identified it as one of the very harms FACTA was created to avoid:

> Congress, at the very least, recognized a card holder's right of privacy in the card holder's complete card account number and account information, and a corresponding right of privacy not to have that information exposed on an electronically printed payment card receipt.

*Creative Hospitality Ventures v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333-34 (S.D. Fla. 2009), *rev'd in part on other grounds*, 444 F.App'x 370 (11th Cir. 2011). Indeed, when signing FACTA into law, President Bush noted the government was "act[ing] to protect individual privacy." *Id.* at 1333, *quoting* 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

This injury is also concrete because it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549. Invasion of privacy is a well-established basis for a lawsuit. *See Parks v. IRS*, 618 F.2d 677, 683 (10th Cir. 1980) (the "common law tort of invasion of privacy" created a remedy for "personal wrongs which result[ed] in injury to plaintiffs' feelings and [were] actionable even though the plaintiff suffered no pecuniary loss nor physical harm. *It is the invasion of the right that is the essence of the action*."), citing 62 Am. Jur. 2d Privacy §45 (emphasis added); *accord Pichler v. UNITE*, 542 F.3d 380, 398–99 (3d Cir. 2008).

Moreover, courts "have recognized as a 'species of privacy violation …. violations of a right to secrecy of personal information . . . .'" *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-34, quoting *Hooters of Augusta v. Am Global Ins. Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005). This includes allowing lawsuits based on a disclosure of private information, even without consequential damage. Warren & Brandeis, THE RIGHT TO PRIVACY, 4 Harv. L. Rev. at

8

199, n.6 ("[The right] does not turn upon the form or amount of mischief or advantage, loss or gain.")

Indeed, the Third Circuit just confirmed that "the unlawful disclosure of legally protected information" is a concrete injury under *Spokeo*. *In re Nickelodeon Privacy Litig.*, 2016 U.S. App. LEXIS 11700 at *22 (3rd. Cir. June 27, 2016). That is precisely what Plaintiff alleges here because again, FACTA makes it unlawful for Microsoft to disclose more than the last five digits of his credit card number on its transaction receipt, yet Microsoft willfully did so (along with disclosing Plaintiff's first and last name). Microsoft does not show otherwise. Accordingly, Microsoft's breach of Plaintiff's privacy interests is an additional concrete injury.

### 2. Microsoft Exposed Plaintiff to a Congressionally Recognized Risk of Identity Theft.

Microsoft also injured Plaintiff by exposing him to a risk of identity theft. This injury is concrete because again, Congress has the power to identify injuries and chains of causation that satisfy Article III (*Spokeo*, 136 S.Ct. at 1549), and Congress determined that the inclusion of more than the last five digits of consumers' credit card numbers on transaction receipts creates a real risk of identity theft that would not exist but for the disclosure of this information on the receipt. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) (FACTA "is aimed at protecting consumers from identity theft").

Specifically, Congress determined the account number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). The inclusion of excess account information on a receipt enables anyone who sees the receipt to use the data in it to discover further information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). In signing FACTA into law, President Bush noted that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333, citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003). Every year,

9

identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy.[6] Further the direct costs of financial fraud, identity theft, or even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).[7]

The complex dimensions of identity theft make the risk to any particular consumer near impossible to quantify. Congress is best equipped to evaluate and address that risk, and thus the exposure to identity theft is exactly the type of intangible harm Congress is best positioned to define as actionable under Article III. *See Spokeo*, 136 S. Ct. at 1549. In doing so with FACTA, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and to "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003).

Microsoft disclosed *ten* digits of Plaintiff's credit card number (along with his first and last name), giving its retail employees and anyone else who might find the receipt access to the information that Congress determined creates a sufficiently real risk of identity theft to pass FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). A "risk of real harm" is enough to meet the injury requirement. *Spokeo*, 136 S.Ct. at 1549. Accordingly, this risk is a concrete injury.

Microsoft questions the significance of this risk, but its alleged skepticism cannot trump Congress's power to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549. Indeed, Congress's

---

[6] See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations 6, at pp. 7, 14, available at https://www.javelinstrategy.com/file/11696/download?token=yB71qLr7. In 2014 and 2013, respectively, approximately 12.7 million and 13.1 million consumers experienced identity theft. (*Id.*) In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

[7] In addition, according to a 2012 FTC report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: August 28, 2014).

judgment is entitled to deference.[8]

Microsoft also cites "data breach" cases that decided that plaintiffs asserting potential identity theft failed to allege an injury in fact against defendants whose computer systems were hacked by third parties.[9] Those cases are inapposite because they do not allege the defendant engaged in conduct that *Congress already determined* creates an actionable risk of real harm. Indeed, the defendants in those cases were themselves victims of the data breaches, whereas here Microsoft willfully disclosed Plaintiff's information in violation of a Congressional decree.

Microsoft also claims that Plaintiff eliminated the risk of harm by keeping the receipt, but Plaintiff's subsequent reduction of the risk of harm does not change the fact that Microsoft created the risk in the first place. Until Microsoft printed a receipt disclosing ten digits of his card number, there was *no* risk of harm. Indeed, the fact that Plaintiff had to take the trouble to keep and protect the receipt instead of discarding it, to avoid further disclosure, is an additional concrete injury. *See*, *e.g.*, *Common Cause/Georgia*, 554 F.3d at 1351 (the inconvenience of having to show a photo ID meets the "injury in fact" test).

Finally, Microsoft cites *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), a case that bears no resemblance to this case. The plaintiff in *Clapper* did not allege a violation of federal substantive rights, or any other rights. The issue in *Clapper* was whether the plaintiff had standing to sue to seek to have a foreign surveillance statute declared unconstitutional based on the plaintiff's speculation that the government might use the statute to justify intercepting the plaintiff organization's communications with persons it was trying to help. *Clapper*, 133 S.Ct. at

---

[8] This is because Congress "is far better equipped than the judiciary to amass and evaluate the vast amount of data bearing upon" legislative questions. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665 (1994) (internal quotation omitted); *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 331 n.12 (1985) ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference.").

[9] *See Kahn*, 2016 U.S. Dist. LEXIS 66404 at *2; *Case v. Miami Beach Healthcare Grp., Ltd.*, 2016 U.S. Dist. LEXIS 56108 at *3 (S.D. Fla. Feb. 25, 2016); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 951 (D. Nev. 2015); *In re SuperValu, Inc.*, 2016 U.S. Dist. LEXIS 2592 at *3 (D. Minn. Jan. 7, 2016); *Whalen v. Michael Stores Inc.*, 2015 U.S. Dist. LEXIS 172152 at *2 (E.D.N.Y. Dec. 28, 2015); *Green v. eBay, Inc.*, 2015 U.S. Dist. LEXIS at *2 (E.D. La. May 4, 2015); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 361 (M.D. Pa. 2015); *Peters v. St. Joseph Serv. Corp.*, 74 F. Supp. 3d 847, 849 (S.D. Tex. 2015); *In re Sci. Appls. Intl. Corp. Backup Tape Lit.*, 45 F. Supp. 3d 14, 19 (D.D.C. 2014).

1142. Plainly these are not our facts, as Microsoft *actually* disclosed Plaintiff's information in violation FACTA, and Congress determined this conduct creates a real risk of identity theft. Under *Spokeo*, that is a concrete injury.

### C.   Plaintiff Meets the Injury Requirement Because Microsoft's Willful FACTA Violation Confers a Right of Action for Statutory Damages.

Plaintiff's standing is also confirmed by the fact that he has a right of action for statutory damages. "Standing" is not an arbitrary limitation. Instead, it exists only to ensure the court's resources are brought to bear on a real controversy asserted by a genuinely interested party with something to gain:

> '[T]he gist of the question of standing' is whether the petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007), quoting, *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also Spokeo*, 136 S.Ct. at 1556 (Ginsburg, J., dissenting) ("The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy….'"), quoting *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) (citations omitted).

Plaintiff squarely meets these concerns. He alleges a real (not hypothetical) FACTA violation that is particular to him (because it concerns his credit card information). Moreover, he alleges the violation is willful which, if proven, entitles him to recover $100 to $1,000 in statutory damages. *Harris*, 564 F.3d at 1312. Plainly, the actual violation of his private rights and his resulting ability to recover statutory damages presents a real, substantial controversy by a plaintiff with a concrete stake. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir. 2015 ("plaintiffs who fail to allege actual damages nonetheless satisfy both the injury in fact and redressability requirements of Article III standing by suing for statutory damages.").[10] For this additional reason, Plaintiff satisfies Article III. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) ("Here, as in all standing inquiries, *the critical question* is whether at least

---

[10] Chief Justice Roberts, who joined the majority in *Spokeo*, reached this same conclusion in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), going out of his way to note that the plaintiff's claim for statutory damages gave rise to an "injury in fact." *See Id.* at 679 (Roberts, C.J., dissenting) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell. To remedy that injury, he requested $1500 in statutory damages for each unauthorized text message.").

one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'") (italics added, citations omitted).[11]

For all of the above reasons, Plaintiff has asserted an injury-in-fact in multiple ways, and thus Microsoft's request for dismissal for lack of standing should be denied.

## II.   The Motion to Compel Arbitration Should Be Denied Because There Is No Agreement to Arbitrate Plaintiff's FACTA Claim.

"[A]rbitration is 'a matter of consent, not coercion.'" *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008), quoting *Volt Info. Scis. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989). A party cannot be "compelled to arbitrate unless that party has entered into an agreement to do so." *Emps. Ins. of Wausau v. Bright Metal Specialties*, 251 F.3d 1316, 1322 (11th Cir. 2001); *see also Seifert v. United States Home Corp.*, 750 So. 2d 633, 636 (1999) ("no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.").

Yet that is exactly what Microsoft is trying to do. It seeks to force Plaintiff to arbitrate his FACTA claim even though he never agreed to arbitrate *any* claim with Microsoft, and even though Microsoft itself never intended to arbitrate *any* FACTA claim against it.

"[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (citations omitted). Likewise, "[w]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.*, citing, *inter alia*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). It is Microsoft's burden to prove the parties agreed to arbitrate. *Schoendorf v. Toyota of Orlando*, 2009 U.S. Dist. LEXIS 33528 at *15-*16 (M.D. Fla. Apr. 21, 2009). But contrary to what Microsoft claims, there is no "presumption in favor of arbitration" because Plaintiff disputes any such agreement exists. *Bazemore v. Jefferson Cap. Sys., LLC*, 2016 U.S. App. LEXIS 12403 at *5 (11th Cir. July 5, 2016) ("the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.").

State law rules of contract formation determine whether the parties have an agreement to arbitrate. *Caley v. Gulfstream Aero Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law

---

[11] Microsoft claims the standing inquiry precludes class certification because it must be individually made for each class member. That argument is both premature and incorrect. There is no individual inquiry because all class members suffered the same violation of their FACTA rights and privacy interests, and the same risk of identity theft that Plaintiff suffered.

generally governs whether an enforceable contract or agreement to arbitrate exists."), citing *Perry v. Thomas*, 482 U.S. 483, 492, n.9 (1987). Florida law governs a purchase made in Florida. *David v. Am. Suzuki Motor Corp.*, 629 F.Supp.2d 1309, 1316 (S.D. Fla. 2009). Indeed, Microsoft relies on Florida law to argue about what the parties agreed to here. (Memo. at p.13).

Under Florida law, there is no agreement to arbitrate for three reasons: (1) the arbitration clause's plain terms exclude persons like Plaintiff who never used the product, (2) Plaintiff never assented to the arbitration clause, and (3) the clause's scope does not reach FACTA claims. Accordingly, Microsoft's request to force Plaintiff to arbitrate his claim should be denied.

**A.      Microsoft Excluded Plaintiff from the Arbitration Clause Because Plaintiff Never Used the Product.**

Contracts must be construed according to their plain terms. *See Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957) ("The test of the meaning and intention of the parties is the content of the written document.").[12] Microsoft claims the arbitration clause at issue is part of a warranty for the Pen Tip Kit that Plaintiff bought. However, by its plain terms, the warranty (and thus the arbitration clause) do not apply to a person unless and until the person actually uses the product:

**LIMITED WARRANTY**

**BY *USING* YOUR …. MICROSOFT BRANDED ACCESSORY PURCHASED FROM AN AUTHORIZED RETAILER ("MICROSOFT HARDWARE"), YOU AGREE TO THIS WARRANTY. BEFORE *USING* IT, PLEASE READ THIS WARRANTY CAREFULLY. IF YOU DO NOT ACCEPT THIS WARRANTY, DO NOT *USE* YOUR MICROSOFT HARDWARE OR ACCESSORY. RETURN IT UNUSED TO YOUR MICROSOFT RETAILER FOR A REFUND.** See www.microsoft.com/surface/warranty for more information.

**If you live in the United States, Section 8 contains a binding arbitration clause and class action waiver.**

(ECF 29-2 at ¶9) (underscored-italics added).

This language demonstrates that the arbitration clause does not apply to Plaintiff, because the undisputed facts demonstrate that Plaintiff never used the product or even opened the packaging. (Decl. of Plaintiff at ¶5, attached as Exh. 2). Instead, he bought the product for someone else. (*Id.*) Accordingly, by Microsoft's own choice of language, Plaintiff never agreed to the warranty or its arbitration clause, and thus he is not bound by it.

---

[12] Florida Supreme Court decisions about Florida state law are binding on federal courts. *Reaves v. Sec'y, Fla. Dept. of Corr.*, 717 F.3d 886, 903 (11th Cir. 2013).

Microsoft admits that arbitration agreements must be enforced according to their terms. (Memo. at p.12). But then it tries to get around the fact that its warranty excludes Plaintiff by misstating what its terms say. First, Microsoft claims "Guarisma's purchase of the Pen Tip Kit … constitutes assent to the arbitration provision." (Memo. at p.16). That is incorrect because, as shown by the actual text itself, it is one's "use" of the product that constitutes assent, not the mere "purchase" of it.

Second, Microsoft claims that Plaintiff must "return" the product to avoid the warranty and its arbitration clause, but once again that is not what the text says. Its only says a purchaser must return the product within 30 days "**FOR A REFUND**." The previous three sentences describe how to avoid accepting the warranty and, again, they only require that Plaintiff not use the product.[13] It is undisputed that Plaintiff did not use the product. Accordingly, the warranty and arbitration clause do not apply to him.

In short, by its own text and the undisputed facts, the warranty and its arbitration clause do not apply to Plaintiff. For this reason alone, Microsoft cannot force him to arbitrate.[14]

**B.      Plaintiff Did Not Assent to the Arbitration Clause.**

The only contract between Plaintiff and Microsoft is one to purchase the product at issue. In exchange for the product, Plaintiff agreed to pay the price Microsoft demanded, and Microsoft accepted by processing his payment. Those were the terms, and by their performance, the parties fully executed that agreement on November 18, 2015.

If Microsoft wanted to add additional terms, it had to propose them before the parties executed the contract, and Plaintiff had to assent to them. *See Gibson v. Courtois*, 539 So.2d 459, 460 (Fla. 1989). Microsoft claims Plaintiff assented to the arbitration clause because allegedly he "clearly had notice of the terms of the Warranty, including the arbitration provision" (Memo. at p.14). That is incorrect. Plaintiff was not aware of the warranty or its arbitration clause when he

---

[13] Even if the paragraph were ambiguous on the matter, the ambiguity must be construed against Microsoft because it drafted it. *Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1337 (11th Cir. 1997) (applying Florida law). The presumption in favor of arbitration does not alter this because it only applies to "ambiguities in the scope of arbitration clause itself," not the rest of the contract. *See Volt Info. Sci.*, 489 U.S. at 476.

[14] Microsoft claims that if Plaintiff disputes that the parties agreed to arbitrate, then there should be discovery and a trial on the issue. That is a delay tactic. There is no basis to dispute that Plaintiff did not use the product, which is dispositive, and thus no fact issue for trial. *See Bazemore*, 2016 U.S. App. LEXIS 12403 at *17.

made his purchase. (Decl. of Plaintiff at ¶6-¶7, attached as <u>Exh. 2</u>). Indeed, until Microsoft raised the issue in this litigation, Plaintiff had no reason to know the arbitration clause existed. No one would think that the mere act of buying something for someone would bind them to arbitration.

Nevertheless, Microsoft claims the arbitration clause in the warranty should be deemed a part of the purchase contract by virtue of the reference to the warranty on the product packaging and the back of the transaction receipt. As explained below, Microsoft is wrong on both counts.

**1.      There Is No Assent to or Consideration for Terms on the Receipt.**

The reference to the warranty among the litany of single-spaced, small print on the back of the receipt does not make the arbitration clause part of the purchase contract. Microsoft did not give Plaintiff the receipt until *after* the transaction ended. By the time Microsoft printed the receipt, it had already accepted Plaintiff's payment, and the parties' obligations were fulfilled.

At that point, the deal could only be modified to include terms from the receipt if the parties agreed to the change, and if Microsoft provided additional consideration. *See Solnis v. Wallis & Wallis, P.A.*, 15 F.Supp.3d 1258, 1268 (S.D. Fla. 2014), citing *Schneir v. State*, 43 So. 3d 135, 137 (Fla. App. 2010) ("like an initial contract, a modification or novation requires lawful consideration for its validity"). However, Microsoft does not claim it sought to modify the contract to include the terms on the back of the receipt or offered additional consideration, nor does it prove that Plaintiff accepted (or was even aware of) the terms on the back of the receipt. Accordingly, the mere reference to the warranty among the litany of small print on the back of the receipt that Microsoft gave Plaintiff after their purchase transaction was complete does not prove the existence of an agreement to be bound by the arbitration clause in the warranty.

**2.      The Product Packaging Does Not Incorporate Arbitration Clause into the Purchase Agreement.**

The reference to the warranty on the product packaging does not make the warranty or the arbitration clause in it part of the purchase contract either. Microsoft claims the mere reference to the "limited warranty" and "surface.com/warranty" on the Pen Tip Kit packaging is itself enough to incorporate the arbitration clause into the purchase contract by reference, but Microsoft's position is contrary to Florida law.

Again, Florida requires mutual assent to contract terms. *Gibson*, 539 So.2d at 460. There is no mutual assent to terms that purport to be incorporated from a separate document or website unless the party seeking to incorporate the terms: (1) expressly tells the other party that the contract is subject to the other terms, and (2) sufficiently describes the incorporated terms:

> to incorporate by reference a collateral document, the incorporating document must (1) specifically provide 'that it is subject to the incorporated [collateral] document' and (2) the collateral document to be incorporated must be 'sufficiently described or referred to in the incorporating agreement' so that the intent of the parties may be ascertained.

*BGT Group, Inc. v. Tradewinds Engine Servs., LLC*, 62 So.3d 1192, 1194 (Fla. App. 2011).

Microsoft flunks this test for several reasons. For starters, Microsoft never told Plaintiff his purchase might be subject to an arbitration clause. Instead, at best, the product packaging only suggests that the product is subject to a "limited warranty."

Moreover, the arbitration clause is not "sufficiently described or referred to" on the packaging. It is not mentioned at all! The bare reference to the limited warranty is not sufficient to inform the reader that it contains an arbitration clause because an arbitration clause is not a required (or normal) part of a warranty. *See*, *e.g.*, 15 U.S.C. §2301(6) (a "written warranty" is simply a promise that the product is free of defects or will meet a specified level of performance, and/or that the seller will repair or replace it if the product fails to meet those promises).

Finally, the mere reference to a website on the packaging also is not sufficient to apprise Plaintiff that the mere act of buying the product could subject him to an arbitration clause. The website does not mention the arbitration clause and, contrary to what Microsoft claims, neither it nor the warranty is "easily available upon visiting the website." (Memo. at p.4). Instead, the website listed on the packaging is just the beginning of a visitor's search.

Specifically, the website contains a list of five "Frequently Asked Questions." (ECF 29-2, ¶5). None mention arbitration, the warranty, the "Pen Tip Kit" or "Surface Accessories." (*Id.*). Instead, below the list is a heading, "Related Topics," followed by two links in smaller print, one of which reads "Surface warranty and extended service plans." (*Id.*). If a visitor finds and clicks this link, she is taken to a second webpage, called "Surface Documents." (*Id.* at ¶7). But this page also does not mention arbitration, the Pen Tip Kit, or accessories. Instead, it presents a list of seven links, one of which is "Surface standard warranty." (*Id.*). If the visitor chooses this link, and selects the language they wish to use, only then is the visitor brought to the warranty, and only then can the visitor find the arbitration clause. (*Id.* at ¶8-¶9).

Given this labyrinth, plus the fact that there is no mention of the arbitration clause until the visitor actually gets to and reads the warranty itself, the bare reference to the warranty and the website on the packaging does not "sufficiently describe" the existence of the arbitration clause, and thus it does not give adequate notice of it:

> In *Affinity*, a computer service contract stated that the contract was "subject to all of [the service provider's] terms, conditions, user and acceptable use policies located" at its website. *Id.* at 1287. We held that the reference to the website as the repository of the collateral documents insufficiently described them so that they could be interpreted as a part of the service contract.

*BGT Group*, 62 So.3d at 1194, citing *Affinity Internet, Inc. v. Consol. Credit Counseling Servs.*, 920 So.2d 1286, 1287 (Fla. App. 2006) ("While the contract in this case does state that it is subject to the collateral document, that simple statement, with nothing more, is insufficient to bind Consolidated to arbitrate."); *see also, e.g.*, *Sgouros v. TransUnion, Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016) ("buried terms and conditions of purchase" on a website are insufficient notice. "[Defendant] cannot manufacture notice where there was none.").

Indeed, compared to the general reference to additional terms deemed insufficient in *BGT Group* and *Affinity*, what Microsoft did was worse. Its packaging is very specific – it says "limited warranty," not "arbitration." This misleads the reader to think the website only contains information about a warranty, not an arbitration clause, and certainly not one that could force the reader to forgo the courts to assert a claim that has nothing to do with the product or warranty.[15]

Microsoft cites a series of cases to argue that its non-disclosure is nevertheless sufficient to incorporate the arbitration into Plaintiff's purchase agreement, but the cases are inapposite because, unlike here, the plaintiffs in them actually used the products and services that were subject to the arbitration clause.[16] By contrast, Microsoft's warranty (and arbitration clause) expressly excludes non-users, and it is undisputed Plaintiff did not use the Pen Tip Kit.

---

[15] Even if the packaging had mentioned arbitration, that still would not be enough because Microsoft never gave Plaintiff a copy of clause. "[T]he existence of conspicuous terms providing for other terms elsewhere is not all that is required to make such other terms binding. The terms must actually be provided." *Gustavsson v. Wash. Mut. Bank, F.A.*, 850 So.2d 570, 573 (Fla. App. 2003) (citation omitted).

[16] *See Williams v. Metropcs Wireless, Inc.*, 2010 U.S. Dist. LEXIS 39225 at *15 (S.D. Fla. Apr. 21, 2010) (service used); *Rivera v. AT&T Corp.*, 420 F.Supp.2d 1312, 1320 (S.D. Fla. 2006) (service used); *Rampersad v. Primeco Pers. Comms., L.P.*, 2001 U.S. Dist. LEXIS 26037 at *5 (S.D. Fla. Oct. 16, 2001) (service activated); *Briceno v. Sprint Spectrum L.P.*, 911 So. 2d 176, 178 (Fla. App. 2005) (service used); *Hill v. Gateway 2000*, 105 F.3d 1147, 1148 (7th Cir. 1997) (product used); *Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515, 520 (3d. Cir. 2007) (service used); *Schafer v. AT&T Wireless Servs., Inc.*, 2005 U.S. Dist. LEXIS 43930 at *1 (S.D. Ill. Apr. 1, 2005) (product used); *Vernon v. Qwest Comm. Int'l, Inc.*, 857 F.Supp.2d 1135, 1147 (D. Colo. 2012) (service used); and *Pentecostal Temple Church v. Streaming Faith, LLC*, 2008 U.S. Dist. LEXIS 71878 at 3 (W.D. Pa. Sept. 16, 2008) (service used for almost two years).

The cases Microsoft cites are also distinguishable insofar as they involved actual disclosures of the subject terms. For example, in *Williams*, the defendant handed a copy of the subject terms and conditions to the plaintiff, and yet she continued to use the defendant's services. *Williams*, 2010 U.S. Dist. LEXIS 39225 at *15; *see also Rivera*, 420 F.Supp.2d at 1315 (terms mailed to plaintiff three times, plus reminders about the terms included in each monthly bill); *Schwartz*, 256 Fed. Appx. at 518 (subscription agreement actually provided); *Briceno*, 911 So. 2d at 178-79 (terms provided in the box with each of several products the plaintiff opened and used over a period of years); *Hill*, 105 F.3d at 1148 (terms in the box with the product); *Rampersad*, 2001 U.S. Dist. LEXIS 26037 at *5 (plaintiff sued to enforce the contract containing the terms and conditions); *Schafer*, 2005 U.S. Dist. LEXIS 43930 at *9-*10 (evidence showed plaintiff received the terms and conditions with the product, even though plaintiff disputed this).

Finally, to the extent any of the non-Florida state cases Microsoft's cites can be read to bind the plaintiff who simply buys (but never uses) a product to an arbitration clause under facts similar to those at issue, they cannot be reconciled with *BGT Group* and *Affinity Internet*, and thus are contrary to Florida law. In short, the bare reference to the limited warranty and website on the product packaging did not incorporate the arbitration clause into Plaintiff's purchase.

### C.      The Arbitration Clause Does Not Cover FACTA Claims.

Even if Plaintiff had used the product and even if Microsoft had effectively incorporated the arbitration clause into his purchase, the clause would not cover Plaintiff's FACTA claim.

The clause expressly limits its reach to "disputes," which the clause defines to mean "any dispute, action, or other controversy between You and Microsoft *concerning the Microsoft Hardware or Accessory (including its price) or this warranty* …." (Warranty ¶8(a)). This narrow definition does not reach Plaintiff's FACTA claim because his claim does not "concern" the product, its price or the warranty. Plaintiff's claim only concerns Microsoft's decision to print more than the last five digits of his credit card number on the transaction receipt.

Despite what the clause says, Microsoft claims the Court should "construe" the clause to reach Plaintiff's FACTA claim because "doubts" about the clause's reach should be resolved in favor of arbitration. But that principle does not apply when, as here, the claim is plainly beyond the clause's scope. "Presumption notwithstanding, 'the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.'" *Paladino v. Avnet Computer Techs. Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998).

Alternatively, Microsoft claims an arbitrator should decide the clause's scope because the clause incorporates American Arbitration Association rules, and because allegedly those rules allow the arbitrator to decide questions about the clause's scope. This argument is incorrect, however, because Plaintiff never signed an arbitration agreement, he disputes he agreed to Microsoft's proposed arbitration clause, and thus he disputes that he is bound by the clause's selection of AAA rules. Accordingly, the alleged AAA rules' presumption does not apply here:

> The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate.* Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986) (per curiam) ("[W]here the allegation is one of . . . ineffective assent to the contract, the issue [of arbitrability] is not subject to resolution pursuant to an arbitration clause contained in the contract documents.").

*Chastain v. Robinson-Humphrey*, 957 F.2d 851, 854 (11th Cir. 1992) (italics in original). The cases Microsoft cites to argue the arbitrator should decide if the clause reaches Plaintiff's claim are inapposite for the same reason. In each, and unlike here, it was undisputed that the plaintiff had entered into an arbitration agreement with the defendant.[17] In short, the reach of the arbitration clause is an issue for this Court, not an arbitrator. *See Chastain*, 957 F.2d at 854. As shown, that issue should be resolved against Microsoft. The request to compel arbitration should be denied.

## CONCLUSION

Plaintiff has standing and he cannot be forced to arbitrate his claims. Defendant's motion should be denied, and the stay of the case should be lifted.

---

[17] *See Terminix Int'l. Co., LP v. Palmer Ranch L.P.*, 432 F.3d 1327, 1329 (11th Cir. 2005) (undisputed that "all of its contracts with Terminix included broadly worded arbitration clauses."); *Norfolk S. Ry. Co. v. Florida E. Coast Ry., LLC*, 2014 U.S. Dist. LEXIS 24737 at *33 (M.D. Fla. Feb. 26, 2014) ("Norfolk does not dispute that the 1995 Haulage Agreement is a valid contract, containing a valid arbitration provision."); *Shea v. BBVA Compass Bancshares, Inc.*, 2013 U.S. Dist. LEXIS 31906 at *11 (S.D. Fla. March 7, 2013); *Crook v. Wyndham Vacation Ownership, Inc.*, 2013 U.S. Dist. LEXIS 160705 at *6 (N.D. Cal. Nov. 8, 2013).

Respectfully submitted,

*/s/Scott D. Owens*
One of Plaintiff's Attorneys

Scott David Owens
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive
Suite 235
Hollywood, FL 33019
954−589−0588
Fax: 954−337−0666
Email: scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
Email: blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, Ltd.
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
312-726-1092
mhilicki@keoghlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 11, 2016, I electronically field the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties below, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: _/s/ Scott D. Owens_____.
One of Plaintiff's Attorneys

22