UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-CV-24326-CMA

CARLOS GUARISMA, individually and
on behalf of others similarly situated,

                Plaintiff,

       v.

MICROSOFT CORPORATION,

                Defendant.

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT ................... 1

III.   THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE ...................... 5

    A.   The Fee Amount Is Reasonable as a Percentage of the Total Settlement ............... 5

    B.   The Proposed Award Is Also Reasonable Under *Johnson/Camden I* ..................... 7

        1.   The Case Involved Difficult Issues; the Risk of Nonpayment
            and Not Prevailing on the Claims was High ................................................ 8

        2.   Class Counsel Achieved an Excellent Result for the
            Settlement Class .......................................................................................... 10

        3.   The Time and Labor Required, Preclusion from Other Employment
            and the Time Limits Imposed Justify the Cost and Fee Amount ............... 11

        4.   The Requested Fee is Consistent with Other Consumer
            Class Settlements ........................................................................................ 12

        5.   This Case Required a High Level of Skill ................................................. 13

IV.    CONCLUSION ............................................................................................................. 13

I.  **INTRODUCTION**

Plaintiff, Carlos Guarisma, individually and as representative of the Class, submits this motion and memorandum in support of the proposed attorneys' fee and expense award that is part of the class action settlement reached with Defendant, Microsoft Corporation, as to the claims asserted under the Fair and Accurate Credit Transaction Act ("FACTA"). A true and correct copy of the Settlement Agreement and Release is attached as *Appendix 1* (ECF No. 56-1).

The Settlement is among the largest all cash settlements in the history of FACTA on a per class member basis.[1] Microsoft shall pay a maximum total of One Million, One-Hundred-Ninety-four Thousand, Six Hundred and Ninety-six Dollars ($1,194,696.00). *Appendix 1* at §II.P.

Consistent with Eleventh Circuit law, which determines fee awards from a common fund on a percentage-of-the-fund basis, the Settlement allows Class Counsel to request an award of fees and expenses equal to one-third of the fund. *Appendix 1*, §III.F. Accordingly, Class Counsel hereby move for an award of $398,232.00. As explained below, this motion should be granted.

II. **SUMMARY OF THE LITIGATION, MEDIATION, SETTLEMENT & THE CLASS'S REACTION TO IT TO DATE.**

FACTA "is aimed at protecting consumers from identity theft…" *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined a credit or debit card number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). Congress also determined the inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer.

---

[1] Until recent years, the largest all cash FACTA settlement that was approved was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash FACTA settlement to date is $30,900,000. *Flaum v. Doctor's Associates, Inc.*, 16-cv-61198-CMA, ECF No. 82, p.6 (S.D. Fla. Mar. 21, 2017) (pending final approval) ("*Flaum v. Doctor's Associates*"). The largest all cash FACTA settlements granted final approval are $11,000,000, $7,500,000, $6,300,000 and $2,500,000, respectively. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, ECF No. 218, p.7 and ECF No. 227 (S.D. Fla. Feb. 18, 2016) ("*Lab*"); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF No. 146, p.9 and ECF No. 151 (S.D. Fla. Aug. 2, 2016) ("*Spirit*"); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, ECF No. 99, p.4 (S.D. Fla. Sept. 28, 2016) ("*Godiva*") (on appeal); and *Wood v. J.Choo USA, Inc.*, 15-cv-81487-Bloom, ECF No. 97, pp.8-9 (S.D. Fla. May 9, 2017) ("*Choo*") (on appeal). The difference among the settlement amounts largely stems from class size. *Flaum*, *Lab*, *Spirit*, *Godiva* had classes with millions or hundreds of thousands of members – here class membership was estimated to be about 60,000. Regardless all of these settlements are terrific results.

*See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information…"). In signing FACTA into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

      To help address this problem, Congress decided to require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information, and thereby "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 at §113 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

      To encourage private litigants to enforce FACTA, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, which entitles a successful plaintiff to statutory damages for any "willful" violation of the law. *See Harris,* 564 F.3d at 1306, *citing* 15 U.S.C. §1681n(a)(1)(A). Consistent with this intent, Plaintiff brought this action to resolve Microsoft's alleged violation of FACTA's prohibition against printing more than the last five digits of credit and debit cards on transaction receipts. (ECF No. 1). On December 28, 2015, the Court *sua sponte* stayed this case pending the outcome of the *Robins v. Spokeo, Inc.* case, which was pending in the Supreme Court. (ECF No. 17). On June 1, 2016, the Court reopened the case. (ECF No. 28). On June 15, 2016, Microsoft filed a motion to dismiss the complaint based on the outcome of *Spokeo* or, in the alternative, to compel arbitration on an individual basis. (ECF No. 29). The parties fully briefed that motion and, on July 6, 2016, the Court denied it. (ECF No. 36). Microsoft filed its answer and affirmative defenses on August 9, 2016 (ECF No. 38).

      Thereafter, Microsoft responded to the discovery requests that Plaintiff had served prior to the stay and provided details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue. This includes follow up discovery obtained by Class Counsel's substantial meet and confer efforts with Microsoft. Among other things, the responses demonstrated that the alleged FACTA violations at issue occurred over a short time frame (between November 6, 2015 and December 2, 2015), that Microsoft promptly

corrected the issue that caused the alleged violations to occur, that Microsoft had no prior complaints against it under FACTA, and that Microsoft's records did not reveal which of its receipts were actually printed. This information was critical to understanding the value of the case and the chances of success on the merits because the FACTA claims at issue require Plaintiff and the class to prove that Microsoft "willfully" violated the law.

The Parties discussed the prospect of settling the case after the denial of Microsoft's motion to dismiss and compel arbitration. The parties attended a full day mediation before a private, third-party mediator, Rodney Max, on September 28, 2016. (ECF Nos. 39, 42). The parties then spent the next two months in additional negotiations to come to an agreement in principle for a class settlement. (ECF No. 47, ¶1-¶2). Even after reaching that milestone, the parties had to spend the next approximately ten weeks actively negotiating the formal settlement agreement. A copy of the Settlement Agreement and Release ("Agreement") is attached hereto as *Appendix 1*.

The Court preliminarily approved the settlement and directed that notice of it be sent. (ECF No. 57). Because Microsoft only had transaction information for most class members, *i.e.*, no name or contact information, Class Counsel had to embark on an extensive campaign to identify and locate the class members. (ECF No. 67, ¶2, fn.1). This required issuing more than fifteen subpoenas to a variety of companies, including American Express, Discover, the third parties involved in processing the transactions for class members who used Visa and MasterCard cards, and finally the numerous banks that issued those cards. *Appendix 2* (Keogh Decl.) at ¶6. The campaign also required extensive analysis, communications and negotiations with the subpoenaed entities and their counsel,[2] many of whom initially resisted complying or professed to have difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. (ECF Nos. 58, 61, 65, 67, 69). As a

---

[2] Although Class Counsel sent similar subpoenas to some of these entities in *Lab*, *Spirit* and *Godiva*, the process of obtaining the data can be just as difficult or more difficult despite the prior experience because of unforeseen circumstances, such as ambiguities about which entities had the information and the imposition of new requirements for producing the data, both of which occurred here. (ECF No. 58 at ¶8). Likewise, delay can be caused despite the prior experience when responsibility for handling a subpoena falls to bank staff who were not involved in the prior cases. (*See*, *e.g.*, ECF No. 67).

3

result of counsel working through the numerous obstacles to identify the class, more than 50,000 notices were mailed. *Appendix 3* (Declaration of Claims Administrator) at ¶3.

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advised class members of the Settlement's terms, the proposed fee and expense award, as well as the class members' right to file a claim, request exclusion and/or object to the Settlement and proposed fee and expense award. The notice expressly told class members in multiple sections that Class Counsel would ask the Court to award a percentage of the fund equal to "one-third of the $1,194,696 fund amount, which is $398,232, to them for attorneys' fees and reasonable expenses." *Appendix 1* at Ex. 3, §7 ("How will Class Counsel be paid?"); *see also Appendix 3* at Ex. A., p.2 ("What does the Settlement provide?"). The notice also directed class members to a settlement website that repeated this information and provided Class Counsel's toll-free telephone number for questions. *Id.* at Ex. A, p.2 ("How do I get more information?"); *Appendix 1* at Ex. 3, §22 ("How do I get more information?").

In response to the notice, to date, 13,685 claims have been filed. *See id.* at ¶6.[3] That is approximately 27% of the number of persons sent direct mail notice of the settlement, a much higher percentage claim rate than the claim rate in many other consumer statutory damage cases that received final approval,[4] and thus a strong endorsement by the Class. Moreover, that number could climb higher as class members still have two more weeks to file a claim. (ECF No. 68, p.2).

Out of the more than 50,000 class members to whom the notice was mailed, to date none have filed any objection to the settlement or the proposed fee and expense award.

Likewise, no governmental entity objected to the proposed fee award after receiving the required CAFA notice of the Settlement and its terms, which was sent on March 6, 2017. In short, currently there is no opposition to the proposed fee award. Plaintiff will update the Court

---

[3] The Claims Administrator is still evaluating the claims to eliminate claims made by non-class members and/or deficient claims. Currently, 8,669 claims are still being evaluated. *Appendix 3* at ¶6. However, even if all of these claims were excluded (which is unlikely), the resulting claim rate would be more than 10%, and thus still exceptional. See fn. 4, below.

[4] *See, e.g., Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780 (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

in his final approval motion if there are any such objections. Yet whether it is zero or a handful, such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005). As further explained below, the proposed fee and expense award should be approved.

### III.   THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d 1330, 1358 (S.D. Fla. 2011), citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

It is worth noting that there is no "clear sailing" agreement in this settlement relating to attorney fees. Instead, after the parties agreed to the class relief, they only agreed that "Class Counsel will petition the Court for an award of reasonable attorneys' fees plus expenses to be paid solely from the Settlement Amount." *Appendix 1*, p.18.

Here, the reasonableness of the fee award is confirmed by examining it as a percentage of the settlement, as well as under the various factors established for evaluating fee requests in the Eleventh Circuit (the *Johnson/Camden I* factors). *Camden I Condo. Ass'n*, 946 F.2d at 775.

#### A.   The Fee Amount Is Reasonable as a Percentage of the Total Settlement

As explained in the notice sent to the class members, the Settlement provides for payment of Class Counsel's fee and expense award from the settlement fund on a percentage-of-the-fund basis. This is an appropriate basis for determining the award because, "[i]n the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Hamilton v. SunTrust Mortg., Inc.*, 2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014), quoting *Camden I Condo*, 946 F.2d at 774; *see also Encarnacion v. J.W. Lee, Inc.*, 2015 U.S. Dist. LEXIS 144858 at *14 (S.D. Fla. Oct. 22, 2015) ("using the 'percentage of recovery' method [to determine the attorneys' fee award] … is consistent with the dictates of the Eleventh Circuit."), citing *Camden I Condo*, 946 F.2d at 771 (bracketed text added).

In addition, the requested fee inclusive of expense award of one-third of the fund easily falls within the range of reasonableness. *Wolff v. Cash 4 Titles, Inc.*, 2012 WL 5290155 at *4

(S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278 at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third of the settlement fund... is fair and reasonable…"); *see also Camden I*, 946 F.2d at 774-775 ("an upper limit is 50%"); and *e.g. Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%).[5]

The reasonableness of the percentage sought is also demonstrated by the fact that it is inclusive of Class Counsel's out-of-pocket expenses, which totaled $4,823.93. *Appendix 2* (Keogh Decl.) at ¶7 ($4,173.93); and *Appendix 5* (Lusskin Decl.) at ¶12 ($650.00). It is not uncommon to award a third of the fund for fees *in addition to* Class Counsel's out-of-pocket expenses. *See, e.g., Lab.*, 14-cv-61543-RLR, ECF No. 227, p.7 (S.D. Fla. Feb. 18, 2016); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶15 (S.D. Fla. Aug. 2, 2016); *Godiva*, 15-cv-60716-WPD, ECF No. 99, ¶13-¶14 (S.D. Fla. Sept. 28, 2016) (on appeal); *Choo*, 15-cv-81487-Bloom, ECF No. 97, p.7, ¶g.

The reasonableness of the percentage sought is further demonstrated by the non-monetary benefits this case confers upon the class. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-1244 (11th Cir. 2011) (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class…"). Specifically, in direct response to these lawsuits, Microsoft reprogrammed its system nationwide to stop printing more than the last five digits of credit and debit card account numbers on transaction receipts.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 of available funds and there was nonmonetary relief. *Poertner*

---

[5] *See Checking Account Overdraft Litig.* 830 F.Supp.2d at 1365 ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).").

*v. Gillette Co.*, 618 Fed. Appx. 624, 626 (11th Cir. 2015) (unpub.). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends *Camden I*'s percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *supra*, § 13:7.

*Id.* at 628 fn. 2. The Eleventh Circuit recently reaffirmed this principal, affirming an $8.3 million fee award from a settlement that had a $30 million cash component even though the settlement provided that unclaimed funds would revert to the defendant. *See Carter v. Forjas Taurus, S.A.*, 2017 U.S. App. LEXIS 11615 at *14-*16 (11th Cir. June 29, 2017) (unpub.). This has long been the law in the Eleventh Circuit. *See Waters*, 190 F.3d at 1295-96 (affirming a 33.33% fee award from a $40 million reversionary settlement fund).

The Eleventh's Circuit's decisions are in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[6] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel, and unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.

*Id.* at 480-81. This District also has recently echoed this principle. *Hamilton*, 2014 U.S. Dist. LEXIS 154762 at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

---

[6] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 477.

As such, Plaintiff's fee request as a percentage is reasonable, especially in light of the fact that Plaintiff is not also seeking a percentage of the value nonmonetary relief, even though the Eleventh Circuit would allow it.

Finally, it must again be noted that out of the more than fifty thousand class members to which the notice describing the proposed award and percentage sought was sent, to date none have objected. Accordingly, as a percentage of the settlement, the fee and expense request is reasonable.

### B.     The Proposed Award Is Also Reasonable Under *Johnson/Camden I*

In cases in which the fees sought exceed 25% of the fund, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of the award. *See Camden I Condo. Ass'n*, 946 F.2d at 772 and 775. The *Johnson/Camden I* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of the proposed fee award here.

#### 1. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are interrelated and support the proposed award.

This case is novel and difficult on several levels. First, it is an open issue as to what evidence it takes to prove that Microsoft "willfully" violated FACTA. Moreover, the failure to prove willfulness has proven fatal in a number of FACTA cases. *See Keller v. Macon County Greyhound Park, Inc.*, 2011 U.S. Dist. LEXIS 45608 at *15 (M.D. Ala. Apr. 25, 2011), *aff'd*, 464 Fed. App'x 824 (11th Cir. 2012) (summary judgment for merchant even though its system printed receipts violating FACTA because violation caused by vendor who fixed the software after system crash); *Najarian v. Charlotte Russe, Inc.*, 2007 U.S. Dist. LEXIS 95606 at *6 (C.D. Cal. Aug. 16, 2007) ("while the evidence may, at best, show that Defendant was careless in

8

failing to ensure that the correct POS modification was implemented, it fails to show that Defendant knew about FACTA's expiration provision and consciously chose to ignore it."). Although Plaintiff is confident in his case, Plaintiff is not aware of any case in which a plaintiff proved willfulness at summary judgment or at trial in a FACTA case.

Second, although Plaintiff defeated Microsoft's motion to dismiss under *Spokeo* (ECF No. 36 at 9), a number of courts outside of this Circuit have granted such motions in FACTA cases. *See, e.g.*, *Thompson v. Rally House of Kansas City*, 2016 U.S. Dist. LEXIS 146146 (W.D. Mo. Oct. 6, 2016); *Noble v. Nev. Checker Cab Corp.*, 2016 U.S. Dist. LEXIS 110799 (D. Nev. Aug. 19, 2016); *Kamal v. J. Crew Grp., Inc.*, 2016 U.S. Dist. LEXIS 145392 (D. N.J. Oct. 20, 2016).

Third, Plaintiff had to defeat Microsoft's motion to compel Plaintiff to arbitrate his claims on an individual basis instead of in a class action. (ECF No. 36 at 12). Such motions are notoriously difficult for consumer plaintiffs to defeat because merchants routinely include broad arbitration clauses in their product use agreements, and because the Federal Arbitration Act creates a body of law that "favors" arbitration. *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (noting the "emphatic federal policy in favor of arbitral dispute resolution.") (citation omitted).

Finally, assuming Plaintiff prevailed and proved a "willful" violation, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")

In addition to these myriad challenges, the ability to recover fees and expenses here has always been contingent on a successful outcome. Class Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176

9

F. Supp.2d 1323, 1335 (S.D. Fla. 2001). The risk was magnified here by the fact that Class Counsel were up against a well-heeled defendant who could afford to employ sophisticated defense counsel, and the difficulty of proving willfulness. Accordingly, "[c]ases recognize that attorneys' risk is ''perhaps the foremost' factor' in determining an appropriate fee award." *Pinto*, 513 F. Supp.2d at 1339 (citations omitted).

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. Prior FACTA class actions required substantial litigation activity to reach settlements comparable to this one. *See Legg v. Lab. Corp. of America*, 14-cv-61543, ECF No. 218, pp. 11-12 (S.D. Fla. Feb. 1, 2016) (18 depositions, including experts, two mediations and no settlement until after hearing on summary judgment, class certification and dueling *Daubert* motions); *Legg v. Spirit Airlines*, 14-cv-61978, ECF No. 146. pp. 12-14 (S.D. Fla.  July 11, 2016) (175,000 pages of documents, depositions (including one out of country) and class certification granted over the defendant's objection). Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of attorney time and out-of-pocket expenses and risk getting nothing, especially given the track record for losing on summary judgment, the inherent possibility of failing to certify the class, and the fact that prior class settlements under FACTA (at the start of this case) provided little incentive to take these cases.

Finally, although Class Counsel achieved an excellent result, that was anything but certain when they took the case. Class Counsel has had success in some FACTA class actions, but stand to recover zero in others. *See, e.g.*, *Flaum v. Buth-Na-Bodhaige, Inc.*, 15-cv-62695, ECF No. 67 (S.D. Fla. March 22, 2017) (class claims settled in competing action). There is certainly no guarantee of success at the class certification stage or on the merits if the case is litigated. Accordingly, this factors also weighs in favor of approving the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 2. Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See*

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").

Here, the parties' mediated agreement provides a Settlement Fund of $1,194,696, among the largest all cash FACTA settlements in history, both in the aggregate and on a per-person basis. This is far greater than the recoveries in many FACTA settlements that received final approval.[7] While most FACTA settlements involve coupons or gift cards (*Id.*), this settlement provides cash. Accordingly, this factor thus weighs strongly in favor of the proposed fee award.

### 3. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against a well-heeled defendant and sophisticated defense counsel. The work needed included counsel's pre-suit investigation, preparing the complaint, defeating Defendant's motion to dismiss and compel arbitration, preparing for and attending a full-day mediation (including the mediation memorandum required by L.R. 16.2(d)(1)(C)), and conducting additional extensive negotiations beyond the mediation to reach the actual settlement.

After that, Class Counsel had to design and execute an extensive a third-party subpoena campaign to identify and locate the tens of thousands of class members. This required essentially a second litigation of subpoenaing class member transaction, identifying and contact information from more than fifteen banks and credit card issuing and processing companies, who were at best reluctant to turn over any information, and at worst uncooperative. *See*, *e.g.*, ECF Nos. 58, 67; *see also Appendix 2* (Keogh Decl.) at ¶6. The results of these efforts are seen in the exceptional

---

[7] *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (class of 400,000 members could claim a $5 voucher.).

claim rate (which may increase, as several weeks remain in the claims period). However, all of this work diverted the time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, although Class Counsel was able to reach this Settlement more efficiently than in some other cases, this reflects Class Counsel's experience in handling large FACTA cases. Class Counsel knew the work that achieving a comparable outcome would take based on their success in the *Lab, Spirit* and *Flaum v. Doctor's Associates* cases referenced above, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chance of achieving it. This experience enabled Class Counsel to convince Microsoft not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides).

**4. The Requested Fee is Consistent with Other Consumer Class Settlements.**

The fifth and twelfth *Johnson*/*Camden I* factors, the customary fee and awards in similar cases supports approval. Plenty of consumer class actions – including two recent FACTA cases in this District – awarded a one-third percentage of the fund for fees. *See Lab*, 14-cv-61543-RLR, ECF 227, ¶13 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for fees); *Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14(g) and ¶15 (S.D. Fla. Aug. 2, 2016) (same); *Godiva*, 15-cv-60716-WPD, ECF No. 99, ¶12(j) and ¶14 (S.D. Fla. Sept. 28, 2016) (same, on appeal); *Choo*, 15-cv-81487-Bloom, ECF No. 97, p.7 (same, on appeal); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317-PAS, ECF No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter,* No. 95-cv-02152-ASG, ECF No. 626 at 7 (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et*

12

*al.*, 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Many of these cases were more desirable than this case because the plaintiff did not have to prove willfulness. Accordingly, this factor also favors the proposed fee and expense award.

### 5. This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factor – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the Plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel were able to steer this case to outcome on par with the largest all-cash FACTA settlements ever achieved, while avoiding exposing the Class's recovery to the risks (such as contested class certification and summary judgment proceedings) faced in those cases. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 2* (Keogh Decl.) at ¶¶2-5, 8-18; *Appendix 4* (Owens Decl.) at ¶¶17-26; *Appendix* 5 (Lusskin Decl.) at ¶¶10-11. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

### IV. CONCLUSION

Class Counsel's fee and expense is both a reasonable percentage of the Settlement and satisfies the *Johnson/Camden I* factors. Accordingly, Class Counsel should be awarded $398,232.00 in fees inclusive of expenses as provided by the Settlement.

Dated: September 12, 2017.

                                            Respectfully Submitted

                                            */s/ Scott D. Owens*
                                            SCOTT D. OWENS, Esq.
                                            3800 S. Ocean Drive, Ste. 235.
                                            Hollywood, FL 33019
                                            Tel: 954-589-0588

Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

Keith J. Keogh
Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com
www.KeoghLaw.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that September 12, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this September 12, 2017, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.