No. 1:15-cv-24326-CMA

---

# In the United States District Court
# For the Southern District of Florida

———————

CARLOS GUARISMA, on behalf of himself and others similarly situated,

*Plaintiff*,

v.

MICROSOFT CORPORATION,

*Defendant.*

———————

## PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

———————

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Keith J. Keogh
Michael S. Hilicki, Esq.
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
mhilicki@KeoghLaw.com

Attorneys for Plaintiff and the Settlement
Class

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION**..................................................................................... 1

II.    **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**.................. 3

III.   **THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT**............................ 5

IV.   **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**...................... 7
       A.    The Agreement Is the Result of Arm's Length Negotiations ................................ 7
       B.    The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors ................. 8
           1.    Likelihood of Success at Trial ................................................................. 8
           2.    Range of Possible Recovery and the Point at which the Agreement
               is Fair, Reasonable, and Adequate ........................................................... 9
           3.    The Complexity and Expense of Further Litigation ............................... 100
           4.    Substance and Amount of Opposition to Agreement............................... 11
           5.    Stage of Proceedings at which Settlement Achieved ............................... 11
       C.    The Proposed Incentive Award Is Reasonable and Proper...................... 12
       D.    The Attorneys' Fees and Costs Sought Are Reasonable ......................... 12

V.     **CY PRES RECIPIENT** ........................................................................... 13

VI.   **EXPENSES BILLED BY THIRD PARTY SUBPOENA RESPONDENTS**............. 13

VII.  **CONCLUSION** ..................................................................................... 14

i

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Southern Farm Bureau Life Ins. Co.*,

    493 F.3d 1276 (11th Cir. 2007) ........................................ 5

*Agne v. Papa John's International Inc. et al*,

    2:10-cv-01139 (D. Wa.) ........................................ 1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,

    No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ............................ 9

*Allapattah Servs., Inc. v. Exxon Corp.*,

    No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ........................................ 11

*Behrens v. Wometco Enters., Inc.*,

    118 F.R.D. 543 (S.D. Fla. 1988) ........................................ 10

*Bennett v. Behring Corp.*,

    737 F.2d 982 (11th Cir. 1984) ........................................ *passim*

*Camden I Condo Ass'n v. Dunkle*,

    946 F.2d 768 (11th Cir. 1991) ........................................ 13

*Cooper v. NelNet, Inc.*,

    14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015) ........................................ 12

*Cotton v. Hinton*,

    559 F.2d 1326 (5th Cir. 1977) ........................................ 12

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*,

    655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) ........................................ 3

*Faught v. Am. Home Shield Corp.*,

    668 F.3d 1233 (11th Cir. 2011) ........................................ 5

*Figueroa v. Sharper Image Co.*,

    517 F. Supp.2d 1292 (S.D. Fla. 2007) ........................................ 10

*Flaum v. Doctor's Associates, Inc.*,

    Case No. 16-cv-61198-CMA (S.D. Fla. Mar. 21, 2017) ........................................ 1

*Gevaerts v. TD Bank, N.A.*,

    2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ........................................ 9, 12

*Guarisma v Hyatt Equities*,
    Case No. 17-cv-20931 (S.D. Fla. Sept. 28, 2017) ............................................................ 9

*Hanlon v. Palace Entm't Holdings*, LLC,
    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)...................................................... 10

*Harris v. Mexican Specialty Foods, Inc.*,
    564 F.3d 1301 (11th Cir. 2009) ....................................................................................... 3

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir.2012) ......................................................................................... 5

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................................ 8

*In re CP Ships Ltd. Sec. Litig.*,
    578 F. 3d 1306 (11th Cir. 2009).......................................................................................5

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195, 211 (5th Cir. 1981) ..................................................................................12

*In re Domestic Air Transport. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ..................................................................................... 7

*In re Mex. Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000)……...................................................................... 11

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D.La.1993)........................................................................................ 11

*In re Sunbeam Sec. Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) ...................................................................... 7, 10

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992)......................................................................................... 7

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)...................................................................................... 8

*Katz v. ABP Corp.*,
    2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014).............................................. 10

*Lee v. Ocwen Loan Serv., LLC*,
    2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015) ............................................12

*Legg v. Lab. Corp. of America,*
    14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) ........................................ 1, 9, 12

*Legg v. Spirit Airlines,*
    14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ........................................... 1, 9, 12

*Lipuma v. Am. Express Co.,*
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .............................................................. 2, 8, 10, 11

*Long v. Joseph-Beth Grp., Inc.,*
    No. 07-cv-00443 (W.D. Pa. May 5, 2007) ...................................................................... 10

*Lumas v. Sw. Airlines Co.,*
    No. 3:13-cv-01429-CRB (S.D. Cal. 2013) ............................................................... 1, 10

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010) .................................................................................................... 5

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ............................................. 5

*Muransky v. Godiva Chocolatier, Inc.,*
    No. 15-cv-60716-WPD, 2016 U.S. Dist. LEXIS 133695 (S.D. Fla. Sept. 28, 2016)... 1, 12

*Newman v. Sun Capital Corp.,*
    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ..................... 8

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.,*
    1:13-cv-06897 (N.D. Ill.) ................................................................................... 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,*
    1:13-cv-03105 (N.D. Ill.) ................................................................................... 1

*Palamara v. Kings Family Restaurants,*
    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ................................. 10

*Perez v. Asurion Co.,*
    501 F. Supp.2d 1360 (S.D. Fla. 2007) ................................................................ 8, 10, 11

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)…................................................................................... 6

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) ............................................................................ 3

*Spicer v. Chi. Bd. of Options Exchange, Inc.,*

844 F.Supp. 1226 (N.D. Ill. 1993) ................................................................ 12

*Spillman v. RPM Pizza, LLC,*

    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................. 1

*Todd v. Retail Concepts Inc.,*

    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) ......................................... 10

*U.S. v. Alabama,*

    271 F. App'x 896 (11th Cir. 2008) ................................................................ 5

*Warren v. City of Tampa,*

    693 F.Supp. 1051 (M.D. Fla. 1988) ................................................................ 7

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.,*

    1:12-cv-00780 (N.D. Ill) ................................................................ 1

*Wood v. J.Choo USA, Inc.,*
    Case No. 15-cv-81487-Bloom (S.D. Fla. May 9, 2017) .................................................. 1

**Other Authorities**

McLaughlin on Class Actions,

    §6:10 (10th ed.) ................................................................ 11

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,*

    57 Vand. L. Rev. 1529 (2004) ................................................................ 2

## I.    INTRODUCTION

Plaintiff, Carlos Guarisma, individually and as representative of the Settlement Class, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, Microsoft Corporation ("Microsoft"), as to his Fair and Accurate Credit Transaction Act ("FACTA") claims, which the Court preliminarily approved on February 28, 2017. (ECF No. 57). A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

The Agreement is among the largest all cash settlement in the history of FACTA on a per-class-member basis.[1] Microsoft agreed to pay a maximum total settlement of One Million, One-Hundred-Ninety-Four Thousand, Six Hundred and Ninety-Six Dollars ($1,194,696.00). *Appendix 1* at §II.P.

The class members were sent notice of the settlement, no class member filed an objection to the settlement, and only two opted out. *See Appendix 2* (Declaration of Claims Administrator) at ¶¶ 12, 16-17. Moreover, the members of the class have filed 5,773 valid claims. *See id* at ¶18. The valid claims make up more than 11% of the people who were sent notice of the settlement, a terrific result. The claim rate for valid claims here is higher than the rate in other consumer statutory damage cases that have been granted final approval.[2]

---

[1] Until recent years, the largest all cash FACTA settlement that was approved was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash FACTA settlement to date is $30,900,000. *Flaum v. Doctor's Assoc., Inc.*, 16-cv-61198-CMA, ECF No. 82, p.6 (S.D. Fla. Mar. 21, 2017) (pending final approval) ("*Flaum*"). The largest all cash FACTA settlements granted final approval are $11,000,000, $7,500,000, $6,300,000 and $2,500,000, respectively. *See Legg v. Lab. Corp. of Am.*, 14-cv-61543-RLR, Dkt. 218, p.1 and 227 (S.D. Fla. Feb. 18, 2016) ("*Lab*"); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, Dkt. 146, p.9 and 151 (S.D. Fla.  Aug. 2, 2016) ("*Spirit*"); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD, ECF No. 99, p.4 (S.D. Fla. Sept. 28, 2016) ("*Godiva*") (on appeal); and *Wood v. J.Choo USA, Inc.*, 15-cv-81487-Bloom, ECF No. 97, pp.8-9 (S.D. Fla. May 9, 2017) ("*Choo*") (on appeal). The difference among the settlement amounts largely stems from class size. *Flaum*, *Lab*, *Spirit*, *Godiva* had classes with millions or hundreds of thousands of members – here class membership was estimated to be about 60,000 at the time of settlement. Regardless, all of these settlements are terrific results.

[2] *See, e.g.*, *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.,* 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza,*

The Settlement also provides a recovery for "Self-Identifier" class members (*i.e.*, those not on the class list) who submitted a claim form averring that they received a printed FACTA non-compliant receipt, provided that their transaction is reflected in Microsoft's transaction data during the short period of time at issue when the technical bug existed (*i.e.*, between November 6, 2015 and December 2, 2015).[3] *Appendix 1* at p.16. Originally, each Self-Identifier's recovery was limited to a pro rata share of $25,000 (up to a $100 maximum per claimant). *Id.* There were 453 valid Self-Identifier claimants, and thus divided into $25,000, the Self-Identifiers stood to recover $55.18 each; however, Microsoft has agreed to allow all valid Self-Identifiers to recover the same $100 maximum allowed under the cap that the persons on the settlement class list will receive. This will not reduce or otherwise affect the payout to the other settlement class members because those class members are already subject to the $100 cap.[4]

Particularly given the absence of any objections, the claim rate is a strong endorsement of the settlement by the class. *See Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) (such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.").[5] Finally, no governmental entity objected to the settlement after receiving the required CAFA notice, which was sent on March 6, 2017. In short, there is no opposition to the settlement, or to Plaintiff's pending motion for an attorneys' fee and expense award. (ECF No. 71).

In granting preliminary approval, the Court found the Agreement was within the range of reasonableness, and thus that the class should be given notice. (ECF No. 57, ¶1). Nothing has changed to alter that finding. To the contrary, as demonstrated by the strong claim rate and complete absence of objections, the class has indicated overwhelming support for the settlement.

---

*LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

[3] Importantly, persons who are not on the class list and do not file a claim will not be releasing any rights, and thus will not be impacted by this settlement.

[4] In addition to the valid claims, approximately 14,834 potentially fraudulent and therefore invalid claims were filed, *i.e.*, they were unsubstantiated claims filed through the Settlement Website by persons who were not on the class list. These claims are not counted in the claim percentage stated above.

[5] In a class this size, the Court should expect to receive at least about 5 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

## II.      SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

FACTA "is aimed at protecting consumers from identity theft…" *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined a credit or debit card number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). Congress also determined that the inclusion of too much credit card account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information…"). Likewise, in signing FACTA into law, President Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) (citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003)).

To help address this problem, Congress decided to require the truncation of credit and debit card account numbers on electronically printed receipts, to spare cardholders from the need to safeguard or destroy their receipts to prevent criminals from obtaining easy access to their credit and debit card information, and thereby "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 at §113 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

To encourage private litigants to enforce FACTA, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, which entitles a successful plaintiff to statutory damages for any "willful" violation of the law. *See Harris,* 564 F.3d at 1306 (citing 15 U.S.C. §1681n(a)(1)(A)). Consistent with this intent, Plaintiff brought this action to resolve Microsoft's alleged violation of FACTA's prohibition against printing more than the last five digits of credit and debit cards on transaction receipts. (ECF No. 1). On December 28, 2015, the Court *sua sponte* stayed this case pending the outcome of the *Robins v. Spokeo, Inc.* case, which was pending in the Supreme Court. (ECF No. 17). On June 1, 2016, the Court reopened the case. (ECF No. 28). On June 15, 2016, Microsoft filed a motion to dismiss the complaint based on the outcome of *Spokeo* or, in the alternative, to compel arbitration on an individual basis. (ECF No.

29). The parties fully briefed that motion and, on July 26, 2016, the Court denied it. (ECF No. 36). Microsoft filed its answer and affirmative defenses on August 9, 2016. (ECF No. 38).

Thereafter, Microsoft responded to the discovery requests Plaintiff had served prior to the stay and provided details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue.  This included follow up discovery obtained by Class Counsel's substantial meet and confer efforts with Microsoft. Among other things, the responses demonstrated that the alleged FACTA violations at issue occurred over a short time frame (between November 6, 2015 and December 2, 2015), that Microsoft promptly corrected the issue that caused the alleged violations to occur, that Microsoft had no prior complaints against it under FACTA, and that Microsoft's records did not reveal which of its receipts were actually printed. This information was critical to understanding the value of the case and the chances of success on the merits because the FACTA claims at issue require Plaintiff and the class to prove that Microsoft "willfully" violated the law.

The Parties discussed the prospect of settling the case after the denial of Microsoft's motion to dismiss and compel arbitration. The Parties attended a full day mediation before a private, third-party mediator, Rodney Max, on September 28, 2016, that did not result in a settlement. (ECF Nos. 39, 42). The Parties then spent the next two months in additional negotiations to come to an agreement in principle for a class settlement. (ECF No. 47, ¶¶1-2). Even after reaching that milestone, the Parties spent the next approximately ten weeks actively negotiating the formal settlement agreement.

The Court preliminarily approved the settlement and directed that notice of it be sent. (ECF No. 57). Because Microsoft only had transaction information for most class members, *i.e.*, no name or contact information, Class Counsel had to embark on an extensive campaign to identify and locate the class members. (ECF No. 67, ¶2, fn.1). This required issuing more than fifteen subpoenas to a variety of companies, including American Express, Discover, the third parties involved in processing the transactions for class members who used Visa and MasterCard cards, and finally the numerous banks that issued those cards. Appendix 3,Keogh Decl. at ¶8. The campaign also required extensive analysis, communications and negotiations with the subpoenaed entities and their counsel,[6] many of whom initially resisted complying or professed to have

---

[6] Although Class Counsel sent similar subpoenas to some of these entities in *Spirit* and *Godiva*, the process of obtaining the data can be just as difficult or more difficult despite the prior

4

difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. (ECF Nos. 58, 61, 65, 67, 69). As a result of Class Counsel working through the numerous obstacles to identify the class, more than 50,000 notices were mailed. *Appendix 2* (Declaration of Claims Administrator) at ¶12.

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advised class members of the settlement's terms, the proposed class representative service award and proposed fee and expense award, as well as the class members' right to file a claim, request exclusion and/or object to the settlement or the proposed awards.

## III.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901 (quoting *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007)).

The plan approved by the Court provided exceptional notice that exceeds Rule 23 and due process requirements. This Court found:

---

experience because of unforeseen circumstances, such as ambiguities about which entities had the information and the imposition of new requirements for producing the data, both of which occurred here. (ECF No. 58 at ¶8). Likewise, delay can be caused despite the prior experience when responsibility for handling a subpoena falls to bank staff who were not involved in the prior cases. (*See, e.g.*, ECF No. 67).

The Court has considered the Class Notice, attached as Exhibits 2 and 3 to the Agreement, including the proposed forms of notice, Mail Notice, Full Notice for the Settlement Website, and Settlement Claim Forms, and finds the forms, content, and manner of notice proposed by the Parties and approved here meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

(ECF 57 at ¶6). These conclusions remain correct as evidenced by the terrific claim rate.

In fact, Class Counsel essentially engaged in a second litigation to ensure broad notice distribution, spending months subpoenaing class member transaction, identifying and contact information from banks and credit card issuing and processing companies. *See Appendix 3*, Keogh Decl. at ¶8. This work required several extensions of the schedule, voice and email communications with the subpoenaed entities and their counsel to overcome resistance to and alleged difficulties complying with the subpoenas, motion practice to facilitate several banks' production, and working with the Class Administrator to resolve issues concerning the data produced and getting the notice finalized and issued to class members on time. *See id*; *see also* ECF Nos. 58, 61, 65, 67, 69. The results of these efforts are seen in the strong claim rate.

The Claims Administrator sent notice to every identified class member for which an address was located. *Appendix 2* at ¶12.[7] It also set up the settlement website as well as the toll-free number for class members to call with any questions. *Id* at ¶¶14-15. The website enabled class members to review the settlement agreement and exhibits, the preliminary approval order, the full notice and FAQs, and file a claim. *Id.* at ¶15. It also provided a toll-free number to reach Class Counsel. *Id.* at ¶14 ("**You can also call class counsel with any questions at 866.726.1092.**"). This was repeated in the FAQs.[8] The notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms and their rights.

---

[7] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.").

[8] As of October 10, 2017, the website had been visited by 30,648 unique visitors. *Appendix 2* at ¶15. As of October 10, 2017, the Claims Administrator's toll-free Voice Response Unit has handled a total of 269 phone calls from persons seeking information about the case. *Id.* at ¶14.

**IV.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988) ("[S]ettlements are highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Ultimately, the Court should approve a settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984). In determining this, some deference should be given to the decision of the Parties. *See Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acctount Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here, as the Agreement is the result of arm's length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

**A.      The Agreement Is the Result of Arm's Length Negotiations.**

The context in which the Agreement was reached confirms that it was the result of arms' length and informed negotiations among the parties, and not collusion. To start, the Agreement only came about after: Plaintiff defeated Microsoft's motion to dismiss and compel arbitration, discovery, and extensive negotiations and a mediation presided over by a highly-qualified third-party mediator. The pre-suit investigation, motion practice, discovery and negotiations gave

experienced counsel ample information about the facts and the chance of success, and enabled them to evaluate the terms of any proposed agreement and ensured a fair compromise. *See Appendix 3* (Decl. of K. Keogh) at ¶¶6-12 and *Appendix 4* (Decl. of S. Owens) at ¶¶29-32. The fact that the Parties were only able to reach a deal after an in-person mediation session by a well-experienced neutral further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). As such, it is clear the Agreement is the result of arm's length and informed negotiations between the Parties, not collusion, and thus, the Court should not hesitate to approve it.

**B.    The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also meets each of the *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (internal citation omitted). Here, each factor weighs in favor of granting final approval.

**1.    Likelihood of Success at Trial.**

The first *Bennett* factor is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Microsoft vigorously denied the Complaint's allegations, and interposed a number of substantial defenses to class certification and the merits, including difficulties determining which persons received printed receipts (to which FACTA applies) and which received only email receipts (to which it has been held FACTA does not apply). Furthermore, although Plaintiff was able to demonstrate that he was not subject to the arbitration based on his specific facts, there

was no guarantee of that outcome for putative class members. Likewise, even if Plaintiff succeeded in certifying the class in a contested proceeding[9] and making it to trial, discovery revealed that the alleged violations only occurred over a short period of time (between November 6, 2015 and December 2, 2015), that Microsoft promptly corrected the issue and that Microsoft had no prior FACTA complaints against it, and thus, Plaintiff and the class risk a jury concluding that Microsoft's alleged violations of FACTA were not willful, defeating their ability to recover.

In addition, even if Plaintiff and the class prevail, any substantial award can be thrown out on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Against the inherent uncertainty of a trial where no other plaintiff has succeeded is the substantial cash relief the class members will receive here. *See Lab. Corp. and Spirit Airlines supra*; *see also Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *38 (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). When the strengths of the claims are weighed against the legal and factual obstacles they face, and the complexity of class action practice, there should be no doubt that this settlement is in the class members' best interests.[10] The first *Bennett* factor weighs in favor of approving it.

### 2. Range of Possible Recovery and the Point at which the Agreement is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery

---

[9] Microsoft strongly contests that class certification is appropriate absent a settlement in part because it argued it could not tell who received a printed receipt. (ECF No. 56 at 7, n.3). Another court just recently denied class certification in a FACTA receipt case based on a similar argument. *See Guarisma v Hyatt Equities*, 17-cv-20931, ECF No. 50, at pp.11-12 (S.D. Fla. Sept. 28, 2017). Although Plaintiff believes that case is distinguishable and that this Court would be well within its discretion to certify the class here over any defense objection, *Guarisma v. Hyatt* illustrates the risk to the class of continued litigation.

[10] *See Appendix 3* (Keogh Decl.) at ¶12; *Appendix 4* (Owens Decl.) at ¶33.

9

'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. It is among largest aggregate recoveries for a class action alleging FACTA violations. Each class member who submitted a valid claim will receive $100 in cash. This is plainly fair, reasonable and adequate, as the relief easily surpasses the potential per-class-member benefit conferred in many other FACTA class settlements that received final approval.[11] This settlement provides a far greater recovery than the next largest settlement from *Lumas v. Sw. Airlines Co.* ($1.8 million to settle between 880,000 and 2,200,000 transactions).

### 3.     The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988)).

This factor favors final approval because the expense and complexity of further litigation would be substantial and require further briefing on numerous substantive issues, extensive trial

---

[11] *See, e.g., Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223, *2 (E.D.N.Y. Oct. 3, 2014) (FACTA settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA settlement providing admission tickets to defendant's business); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.*, No. 07-cv-00443 (W.D. Pa. May 5, 2007) (class of 400,000 members could claim a $5 voucher).

preparation, and appeal. *See Appendix 3* (Keogh Decl. at ¶¶8-9; *Appendix 4* (Owens Decl.) at ¶¶31-32).

Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

### 4.       Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of more than 50,000 settlement class members, none filed objections. These facts, combined with the high claim rate, shows this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").[12]

### 5.       Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383.

Here, the Agreement was not reached until after the denial of a motion to dismiss or compel arbitration, discovery about the merits and the class, a day-long mediation before a professional

---

[12] *In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir.); McLaughlin on Class Actions §6:10 (10th ed.) ("the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.").

11

neutral, and additional negotiations.[13] Furthermore, Class Counsel recently achieved comparable settlements on a per-class member basis in *Lab*, *Spirit* and *Muransky*, which are also FACTA cases, and involved substantial litigation of the same issues this case presents. The fact that Class Counsel was able to achieve a substantially similar outcome here should leave no doubt that they had sufficient information about the facts, the class, and the range of the class's potential recovery. Hence, Class Counsel was well-informed, had sufficient information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. In short, the *Bennett* factors also support final approval.

### C.    The Proposed Incentive Award Is Reasonable and Proper

As permitted by the settlement, Plaintiff requests an incentive award of $10,000. (*Appendix 1* at § III.F.2. The notice expressly advised class members that Plaintiff would seek an incentive award up to this amount (*Appendix 1* at Ex. 2 p. 2, Ex. 3 p. 1, Ex. 3 p. 4), and the notice also expressly advised class members that they had the right to object to it (*id.* at Ex. 2 p. 3), but no class member objected to it.  The proposed award is well within the range of reasonableness. *See, e.g.*, *Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, ECF No. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award); *Gevaerts*, 2015 U.S. Dist. LEXIS 150354, *25-*26 ($10,000 incentive awards to two sets of plaintiffs) (citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993)) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *Legg v. Lab. Corp. of Am. Holdings*, No. 14-61543-RLR, 2016 U.S. Dist. LEXIS 122695 (S.D. Fla. Feb. 18, 2016) ($10,000, in a FACTA case); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC, ECF No. 151, ¶16 (S.D. Fla.) ($10,000 each to two plaintiffs, in a FACTA case); and *Muransky v. Godiva Chocolatier, Inc.*, No. 15-cv-60716-WPD, 2016 U.S. Dist. LEXIS 133695, *11 (S.D. Fla. Sept. 28, 2016) ($10,000, in a FACTA case).  Accordingly, it should be approved.

### D.    The Attorneys' Fees and Costs Sought Are Reasonable

On September 12, 2017, Plaintiff moved for an award of attorney fees and expenses equal

---

[13] Although the discovery obtained from Microsoft in lead up to the settlement negotiations was sufficient, it must be noted that extensive formal discovery is not required prior to settlement. *See Lee v. Ocwen Loan Serv., LLC*, 2015 U.S. Dist. LEXIS 121998 at *75-*76 (S.D. Fla. Sept. 14, 2015) ("we are not compelled to hold that formal discovery was a necessary ticket to the bargaining table. … informality in the discovery of information is desired."), *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) and *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

to one-third of the settlement fund, inclusive of expenses, which equaled $398,232.00.  (ECF No. 71).  Before Plaintiff filed his motion, the class was explicitly informed as to the amount of the attorneys' fee and expense award sought, and how it was calculated.  Specifically, the notice told class members in multiple sections that Class Counsel would ask the Court to award a percentage of the fund equal to "one-third of the $1,194,696 fund amount, which is $398,232, to them for attorneys' fees and reasonable expenses."  (*Id.* at 4, citing App. 1 at Ex. 3, §7 ("How will Class Counsel be paid?") and App. 3 at Ex. A, p.2 ("What does the Settlement provide?")).  The notice also directed class members to a settlement website that repeated this information and provided Class Counsel's toll-free telephone number for questions.  (*Id.* at 4, citing App. 3 at Ex. A, p.2 ("How do I get more information?") and App. 1 at Ex. 3, §22 ("How do I get more information?").

In his fee motion, Plaintiff advised the Court that no class member had filed any objection to the proposed fee and expense award in response to the notice as of that date, but that Plaintiff would update the Court on whether any objection had been filed to the proposed award in the instant motion. (*Id.* at 4-5). As noted above, no objection has been filed to any portion of the settlement, including Plaintiff's motion for an attorneys' fee and expense award. For the reasons set forth in that motion, Plaintiff submits that his attorneys' fee and expense request satisfies the *Johnson/Camden I* factors, is therefore reasonable, and accordingly should be approved.

## V.      CY PRES RECIPIENT

If approved, the settlement requires all proceeds claimed by settlement class members to be distributed to the settlement class members.  However, if any claimed settlement funds cannot be distributed due to uncashed settlement checks, with the Court's approval, those funds will be distributed to Future of Privacy Forum (https://fpf.org) as a *cy pres* recipient on behalf of the class. *Appendix 1* at §III.D.ii

## VI.      EXPENSES BILLED BY THIRD PARTY SUBPOENA RESPONDENTS

As noted above, the process of gathering settlement class member identifying and contact information required Class Counsel to issue subpoenas to non-party banks under Federal Rule 45, which provides for reimbursement of reasonable expenses. Accordingly, several banks sent Class Counsel invoices seeking compensation for the work performed or expenses incurred in connection with generating and producing class member identifying and contact information in

response to the subpoenas. Class Counsel advised the banks they would submit their invoices to the Court for approval of payment as costs of settlement administration from the Settlement Fund. A list of the banks seeking payment, and the amount sought by each, is as follows:

|   | Bank | Invoiced Amount |
|---|------|-----------------|
| 1 | TD Bank, N.A. | $250.75 |
| 2 | Fifth Third Bank | $488.01 |

The banks' invoices are attached as *Appendix 5.*

## VII.    CONCLUSION

This Settlement provides substantial and immediate cash benefits for the class, it is among the largest all-cash FACTA settlements in history, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, it satisfies each of the six *Bennett* factors, no class member objected to the proposed class representative incentive award, and the proposed award is consistent with awards in similar cases.  The settlement is fair, reasonable and adequate under Rule 23, and thus, Plaintiff respectfully requests that this Court enter an order granting final approval.  A proposed Final Approval Order is attached hereto.

Dated: October 13, 2017.

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keith J. Keogh
Keogh Law, LTD.

14

55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
Keith@KeoghLaw.com
www.KeoghLaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that October 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.

15